# THEODORE M. WALKER

*v.*

# MARY JANE COLEMAN.

1.  HUSBAND AND WIFE—*fraud upon wife by husband acting as her agent.* Where a husband is authorized by his wife to buy property for her as her agent, and the seller knows that the husband is such agent, he is also charged with knowing that power to the husband to appropriate to himself any portion of the money of his wife is not implied from such agency, and if money is so appropriated by the husband by arrangement with the seller, it is a fraud upon the wife, for which she can recover against the seller.

2.  SAME—*party to fraud upon wife by husband liable to wife.* Where a husband, as the agent of his wife, buys land for her at a certain price, but, by an arrangement between him and the seller, double that price is paid, and the excess repaid to the husband and appropriated to his own use, without the knowledge of the wife, and without express authority from the wife, she can recover the amount of such excess from the seller, in a suit for money had and received to her use.

3.  SAME—*misrepresentation by husband.* Where a husband, as agent for his wife, buys property, and, by arrangement between him and the seller, more money is paid than the contract price, and the excess is repaid to the husband and appropriated to his own use, without the knowledge of the wife, the fact that the husband may have stated to the seller that the wife was aware of and consenting to the arrangement, will not relieve the seller from liability to the wife in an action by her against him for money had and received to her use.

APPEAL from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

Messrs. ROWELL & HAMILTON, for the appellant.

Messrs. STEVENSON & EWING, and Mr. ISAAC N. PHILLIPS, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was assumpsit, for money had and received by the defendant to the plaintiff's use.

Suit was commenced in the county court of McLean county, where trial was had, resulting in a judgment for the plaintiff

for $354.25. Appeal was taken to the circuit court of that county, and the judgment of the county court was there affirmed. From that judgment the case is brought to this court by the defendant's appeal.

Plaintiff is a married woman, now living separate from her husband, but at the time the cause of action accrued she was residing with him. She had been married before, and had children by her former marriage. She had property and money in her own right, and was desirous of purchasing a farm. The defendant was a real estate agent, doing business in Bloomington, and, as such, had the agency for selling a farm known as the "Wilcox farm," and also for selling certain lands in the State of Kansas. Plaintiff's husband, assuming to act for her, negotiated for the purchase of the Wilcox farm, and also for the Kansas lands, and turned the Kansas lands over to the owner of the Wilcox farm, in part payment for it, at $10 per acre; but in his negotiation for the Kansas lands the price agreed to be paid for them was only $2.50 per acre. When the deeds were made and the transaction closed, plaintiff was told the price to be paid for the Kansas lands was $5 per acre instead of $2.50 per acre; and she paid the defendant $350 in money, and executed and delivered to him her promissory note for $450, in excess of the price of the Kansas lands at $2.50 per acre. Subsequently, the plaintiff found the note she had given the defendant in her husband's pocket, and she then, for the first time, learned that the price of the Kansas lands was only $2.50 per acre. She thereupon called upon the defendant, and he informed her that the price of those lands was $2.50 per acre, and that the note and money had gone to her husband.

There is no pretense that plaintiff's husband was entitled to have the note or money, or that the plaintiff ever agreed he should have either. Plaintiff testifies that she had no arrangement with her husband to that effect, and that she did not have any knowledge of his getting them, until she found the note in his pocket.

The note was subsequently obtained by the defendant and

returned to the plaintiff, and the present suit relates only to the $350 of money.

The defendant testifies that after he and plaintiff's husband had agreed on the terms of the trade, " he said he had been working for the family two or three years and had got nothing for it, and his wife was going to allow him something in the trade. Said he had talked the matter over with her, and she was going to allow him $5 per acre in the Kansas land. * * He said his wife had a daughter about to be married, and that if she knew Mrs. Coleman was allowing him anything in the trade she would make a fuss, and that he and Mrs. Coleman had arranged that the extra $2.50 per acre for the Kansas land was to be paid to me and by me to him; that $450 would be in a note; and to make it all right, it had been arranged that the note should be made payable to me. I told him I didn't care how they fixed the matter; that I wanted to sell the Wilcox farm and the Kansas land, and they could do what they pleased with the balance of the money." He says, when the money was paid and the note given, all the conversation he had with the defendant was, he asked her if she knew she was paying $5 for the Kansas lands, and she said she did. He paid her husband the $350 and gave him the note in the express office, and he does not claim that the defendant was present or had any knowledge of what he did.

It is true, as contended by the counsel for the defendant, the defendant was not agent or trustee for the plaintiff; but it is also true that he knew her husband was her agent in the negotiations he had with him; and he must also be charged with knowing that power to appropriate to himself the $350 in money and the defendant's note, was not implied from such agency, and that if he did not have express authority to do so the act was a fraud upon the plaintiff. The defendant had no information from the plaintiff which justified him in supposing she had consented to this appropriation by her husband. He relied solely on his word for that. When the defendant consented to aid the plaintiff's husband in his scheme, by receiving the money and the note, as if in good faith for the

payment of the lands, but in fact, to hold for and deliver over to him, he made himself a party to the transaction, and assumed the responsibility of its being in good faith.

The story of the husband bore evidence of fraud upon its face, and it is difficult to believe that the defendant did not. in fact, know. as it was legally his duty to know, what the husband's purpose was. The daughter was not present when the transaction was consummated, and there was no necessity for the circumlocution and mystery that were observed, if the only purpose was to keep knowledge of the transaction from her ears. Why not hand the money and note to the defendant's husband in her presence? Why ask her if she knew she was paying $5 an acre for the Kansas lands? Why not ask her if she knew she was only paying $2.50 per acre for them?

We are entirely satisfied with the verdict, under the evidence, and think there was no substantial error of law in the giving or refusing of instructions.

The certificate of a settlement between the plaintiff and her husband, whether, as she swears. extorted from her by duress, or not. is, in no sense, a release of this cause of action. It is not given to the defendant, or for his benefit, nor does it profess to have any reference to this cause of action.

The judgment is affirmed.

*Judgment affirmed.*